IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

────────────────────────────────

EDDIE JAMES LEE, SR.,

                         Plaintiff,

            -v-                                Civil Action No.
                                               9:04-CV-0382 (TJM/DEP)

DAVID DelFAVERO,[1]

                         Defendant.

────────────────────────────────


APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

EDDIE LEE JAMES, SR., *Pro Se*

FOR DEFENDANT:

HON. ELIOT SPITZER                  STEPHEN M. KERWIN, ESQ.
Attorney General of the State       Assistant Attorney General
of New York
Attorney for Defendants
Department of Law
The Capitol
Albany, New York   12224

────────────────────

        [1]        Although the defendant is identified in plaintiff's complaint, and on the
court's records, as David Defifaverio, the correct spelling of his last name is DelFavero.
The clerk will therefore be directed to correct court's records to reflect this change.

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Eddie James Lee, Sr., a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983, claiming deprivation of his civil rights.  In his complaint, plaintiff asserts that his privacy rights were violated when prison medical officials disclosed information regarding his medical condition to a corrections officer, without his permission.  As relief, plaintiff seeks recovery of compensatory damages for mental anguish and emotional distress in the amount of $30,000.

In response to plaintiff's complaint, defendant has moved seeking its dismissal both on the merits, arguing that plaintiff's complaint fails to set forth a legally cognizable deprivation of his right to privacy, and based upon the lack of defendant's involvement in the conduct giving rise to the alleged violation.  For the reasons set forth below, I recommend that defendant's motion be granted, with leave to replead.

I.     <u>BACKGROUND</u>[2]

_____

[2]      In light of the procedural posture of this case, the following recitation is taken from plaintiff's amended complaint, Dkt. No. 5, with all ambiguities resolved, and inferences drawn, in a light most favorable to the plaintiff.  *Donhauser v. Goord*, 314

2

At the times relevant to this action, plaintiff was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and confined within the Cayuga Correctional Facility ("Cayuga"), located in Moravia, New York.  Plaintiff is disabled and, prior to having been sent to prison, was receiving Social Security supplemental security income ("SSI") benefits.  Since entering prison the plaintiff suffered a stroke, affecting his left side and requiring him to utilize a cane when walking.

Although the precise sequence of events is unclear from plaintiff's submissions, it appears that on March 6, 2004, plaintiff was directed by Corrections Officer B. Peters to clean his cell.  Lee attempted to comply with that directive, but reported experiencing pain while doing so.  As a result, plaintiff was sent to the prison infirmary and was seen by a nurse, who placed him on a list of inmates to be seen by a doctor.

When plaintiff returned to his cell, Corrections Officer Peters telephoned the infirmary to inquire regarding Lee's condition, and

_____

F.Supp.2d 119, 121 (N.D.N.Y. 2004).  In addition, I have also considered plaintiff's submission in opposition to the instant motion, to the extent that it is consistent with, or clarifies, the legal claims set forth in his amended complaint.  *Negron v. Macomber*, No. 95 Civ. 4151, 1999 WL 608777, at \*5 (S.D.N.Y. Aug. 11, 1999); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987).

specifically whether he was capable of performing additional work.  In response, the corrections officer was apparently told by medical personnel that Lee was able to work.

## II.  PROCEDURAL HISTORY

Plaintiff commenced this action on April 6, 2004, and, at the court's directive, filed an amended complaint on June 24, 2004 outlining his claims as well as the factual basis for them.  Dkt. Nos. 1, 2, 5.  Named as the sole defendant in plaintiff's complaint is David DelFavero, who is identified as the Head Administrative Nurse at Cayuga.[3]  Plaintiff's complaint asserts violation of his right to privacy as a result of the dissemination of information regarding his condition to non-medical prison personnel, without his consent.

In response to plaintiff's complaint, defendant moved on December

---

[3]        In its caption, plaintiff's amended complaint also appears to name the DOCS as a defendant.  That agency, however, is not among the defendants listed in the body of plaintiff's complaint.  Because there are no allegations in the body of plaintiff's amended complaint addressing the involvement of the DOCS in the constitutional violations asserted, if deemed to be a named defendant the agency would be entitled to dismissal for lack of personal involvement.  *Hucks v. Artuz*, No. 99 Civ. 10420, 2001 WL 210238, at *5 (S.D.N.Y. Feb. 27, 2001); *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999); *Brown v. Costello*, 905 F. Supp. 65, 77 (N.D.N.Y. 1995).  In any event, any claims asserted under 42 U.S.C. § 1983 against the DOCS would be subject to dismissal on the basis of the Eleventh Amendment. *Santiago v. New York State Dept. of Corr. Servs.*, 945 F.2d 25, 28 n.1 (2d Cir. 1991), *cert. denied*, 502 U.S. 1094, 112 S. Ct. 1168 (1992).

29, 2004 seeking its dismissal for failure to state a cause of action upon which relief may be granted.  In his motion, defendant advances three arguments in support of his request for dismissal of all or portions of plaintiff's complaint, arguing that 1) plaintiff's complaint fails to assert a cognizable constitutional violation; 2) in any event, plaintiff's complaint fails to establish his personal involvement in the constitutional violation alleged; and 3) to the extent that it seeks recovery of compensatory damages, plaintiff's claim is deficient based upon his failure to allege any resulting physical injury.  In a submission filed on February 18, 2005, plaintiff has opposed defendant's motion, essentially reiterating the matters set forth in his complaint.   Dkt. No. 15.

Defendant's motion, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Rule 12(b)(6) Standard

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief." *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir. 2003) (citing, *inter alia*, *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)). In deciding a 12(b)(6) motion, the court must accept the material facts alleged in the complaint as true. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964).

When determining whether a complaint states a cause of action, a court should afford great liberality to *pro se* litigants. *Davis*, 320 F.3d at 350 (citation omitted). In fact, the Second Circuit has held that a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

B.   Right To Privacy

At the heart of plaintiff's claim is the contention that his constitutional right to privacy was violated when medical officials at Cayuga released information concerning his medical condition, and specifically whether he was capable of carrying out work assignments, to non-medical correction workers at the facility. Defendant maintains that under the circumstances set forth in plaintiff's complaint there is no cognizable privacy right

6

implicated.

In *Doe v. City of New York*, the Second Circuit recognized a right of privacy enshrouding information to the effect that a person has been infected with the human immunodeficiency virus ("HIV").  15 F.3d 264, 267 (2d Cir. 1994).  In recognition of the inherently private nature of certain conditions, including HIV positive status, and the attendant risk of embarrassment and ridicule for a person whose intimately private condition becomes known, the court in *Doe*  "constitutionalized" a right of privacy with respect to such information under the umbrella of the due process clause of the Fourteenth Amendment.  *Id.*; *see Powell v. Shriver*, 175 F.3d 107, 112 (2d Cir. 1999).

While prison inmates are divested of many significant constitutional rights as a result of their status, the limited right of privacy recognized in *Doe* has been extended to cover medical information regarding prison inmates, and in particular that which discloses certain types of medical conditions.  *See Powell*, 175 F.3d at 112-13 (citing *Doe*).  Under the protections afforded by this limited right, "a prisoner's interest in keeping a medical condition private varies with the condition."  *Rodriguez v. Ames*, 287 F. Supp.2d 213, 220 (W.D.N.Y. 2003) (citing *Powell*, 175 F.3d at

7

111).  This narrow constitutional right obtains in the case of an unusual medical condition which, if disclosed unnecessarily, would likely expose an inmate to ridicule, discrimination, or even potentially violence, particularly when the word of the condition is likely to spread through "humor or gossip[.]"  *Powell,* 175 F.3d at 112; *Rodriguez*, 287 F. Supp.2d at 220; *see also Leon v. Johnson*, 96 F. Supp.2d 244, 252 (W.D.N.Y. 2000).  Conditions found sufficient to have triggered this qualified right of privacy include HIV positive status, as well as transexualism.  *Powell*, 175 F.3d at 112-13 (transexualism); *Doe*, 15 F.3d at 266-67 (HIV positive).

        *Powell* and the relative few cases in this circuit which have addressed the issue of disclosure of a prison inmate's medical information disclose the relatively narrow confines of the cause of action of which plaintiff now seeks to avail himself.  The cases in which the unauthorized disclosure of prison medical information has been found to give rise to liability involve inmates with unknown conditions which, if publicized, would subject the inmate to harassment, shame or ridicule.  *Powell*, 175 F.3d at 112-13; *contrast Rodriguez*, 287 F.Supp.2d at 220-21; *Leon*, 96 F.Supp.2d at 252.  Those cases also reveal that the liability inquiry is informed by whether legitimate penological interests are at stake when the

disclosure is made.  *See Powell*, 175 F.3d at 112-13; *Rodriguez*, 287

F.Supp.2d at 220-21; *Leon*, 96 F.Supp.2d at 252.  Thus, for example, the

disclosure by prison officials of an inmate's medical information to law

enforcement for purposes of an ongoing investigation does not give rise to

liability.  *Webb v. Goldstein*, 117 F. Supp.2d 289, 298-99 (E.D.N.Y. 2000);

*contrast Powell*, 175 F.3d at 112 ("[G]ratuitous disclosure of an inmate's

confidential medical information as humor or gossip . . . is *not* reasonably

related to a legitimate penological interest, and it therefore violates the

inmates constitutional right to privacy") (emphasis in original; footnote

omitted).

        In this instance plaintiff's complaint, generously construed in the

context of his submissions in opposition to the present motion, is devoid of

any indication that he suffers from a condition of such magnitude or nature

as to place it on par with HIV positive status or transexualism which was

disclosed indiscriminately to non-medical personnel.  Additionally,

plaintiff's complaint fails to allege – and indeed suggests to the contrary –

that his medical information was disclosed to non-medical personnel for

no legitimate penological reason, and in a fashion that would implicate the

constitutional privacy right recognized in *Powell.*  Instead, plaintiff's

9

complaint appears to stem from the fact that prison medical officials advised correction workers that his medical condition did not preclude him from carrying out a work assignment.

Under these circumstances, plaintiff's claim does not implicate a constitutionally cognizable right. Accordingly, I recommend dismissal of plaintiff's complaint, though with leave to replead in order to allow him, if he is able, to demonstrate the existence of facts which, if proven, would suffice under *Powell* to establish a cognizable constitutional claim. *Branum*, 927 F.2d at 704-05.

C.   Personal Involvement

The second prong of defendant's dismissal motion attacks the legal sufficiency of plaintiff's allegations regarding his involvement in the constitutional violations alleged. In his motion, defendant maintains that because it is apparent he is sued only by virtue of his administrative position at Cayuga, plaintiff's claims against him should be dismissed.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,*

568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were occurring. *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

From a review of plaintiff's complaint and motion submission, defendant's position regarding this issue appears to be well taken. Plaintiff's complaint does not identify defendant DelFavero as the person who disclosed allegedly private information to correction officers. Instead, it appears that DelFavero is named as a defendant solely in light of his capacity of the head administrative nurse at the facility. *See*, *e.g.*, Amended Complaint (Dkt. No. 5) § 7, ¶ 3. This conclusion is buttressed by plaintiff's motion submission, in which he states that his complaint "charge[s] [defendant] with failure to exercise his authority as the head nurse at the Cayuga Infirmary[.]" Plaintiff's Motion Response (Dkt. No. 15) at 1.

Since plaintiff's allegations against defendant DelFavero are completely devoid of a tangible connection between his actions and plaintiff's alleged injuries, his claim against that defendant is subject to dismissal on this additional, independent basis. *Cf.*, *e.g.*, *Gill*, 824 F.2d at 196 (dismissal appropriate where plaintiff does no more than allege that defendant was in charge of prison); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (same); *see also Richardson*, 347 F.3d at 435 ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state

commissioner of corrections or a prison superintendent in a § 1983

claim."; quoting *Ayers*, 780 F.2d at 210).

     D.     <u>Failure to Allege Physical Injury</u>

     Plaintiff's complaint seeks recovery of $30,000 in damages for

mental anguish and emotional distress.  *See* Amended Complaint (Dkt.

No. 5) § 9.  Defendant asserts by virtue of his failure to plead the

existence of any physical injury resulting from the constitutional violation

alleged, plaintiff is precluded from recovering compensatory damages.

     Section 1997e(e), a provision added by the Prison Litigation Reform

Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996),

provides in relevant part that

> [n]o Federal civil action may be brought by a
> prisoner confined in a jail, prison, or other
> correctional facility, for mental or emotional injury
> suffered while in custody without a prior showing of
> physical injury.

42 U.S.C. § 1997e(e).  Section 1997e(e) includes within its purview

alleged constitutional violations.  *Thompson v. Carter*, 284 F.3d 411, 417-

18 (2d Cir. 2002); *Petty v. Goord*, No. 00 Civ.803, 2002 WL 31458240, at

*8-*9 (S.D.N.Y. Nov. 4, 2002).  Claims brought by inmates pursuant to

section 1983 for emotional damages unrelated to any physical injury are

subject to dismissal. *Shariff v. Coombe*, No. 96 Civ. 3001, 2002 WL 1392164, at *4 (S.D.N.Y. June 26, 2002). The absence of physical injury does not totally bar claims by inmates under section 1983, however, since section 1997e(e) does not preclude claims for nominal damages, punitive damages, or declaratory or injunctive relief. *Id.*, at *5 (citation omitted).

In light of plaintiff's failure to plead physical injury directly attributable to the constitutional violation alleged, I recommend that this portion of defendant's motion be granted, and plaintiff's claim for compensatory damages for mental anguish and emotional distress be dismissed.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint in this matter stems from the allegedly unauthorized disclosure by prison medical officials to prison correction workers of information regarding his medical condition, and in particular his ability to perform work assignments. Because plaintiff's complaint fails to implicate a cognizable protected privacy interest, I recommend that his complaint be dismissed on the merits. Additionally, in light of the fact that defendant DelFavero is named by the plaintiff solely in his supervisory capacity as head administrative nurse at Cayuga, with no indication in plaintiff's complaint that he had any personal involvement in the

14

constitutional violation alleged, I recommend dismissal of plaintiff's claims against him on this separate and independent basis.  Finally, I recommend that plaintiff's claim for compensatory damages be dismissed based upon his failure to allege a corresponding physical injury arising from the constitutional violation described in his complaint.

Based upon the foregoing, it is hereby

RECOMMENDED that defendant's motion to dismiss plaintiff's complaint (Dkt. No. 13) be GRANTED and that plaintiff's complaint in this action be DISMISSED in its entirety, with leave to replead; and it is further

ORDERED that the clerk amend the court's records to include the proper spelling of defendant's name as "DelFavero."

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989)).

It is further ORDERED that the Clerk of the Court serve a copy of

15

this report and recommendation upon the parties by regular mail.

Dated:      September 6, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\civil rights\right to privacy\medical privacy\lee2.wpd